**FILED**

2004 JAN 12  A 11: 40

US DISTRICT COURT
BRIDGEPORT CT

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHIRLEY RAWLS** | : | **3:02CV01851 (SRU)** |
| **VS.** | : | **JURY TRIAL DEMANDED** |

**NEW HAVEN**
    **BOARD OF EDUCATION,**

**KAREN WOLFF,**
    **individually and in her**
    **official capacity**

**STARLETT WILDER,**
    **individually and in her**
    **official capacity**

**AFSCME**
    **LOCAL 884**

**JOHN BLANDO,**
    **individually and in his**
    **official capacity**

**AFSCME COUNCIL 4,**

**ERNIE LEWIS,**
    **individually and in his**
    **official capacity**          :      **JANUARY 12, 2004**

## SECOND AMENDED COMPLAINT

Comes now, Shirley Rawls, by her attorney Michael W. Mackniak, and makes

the following for her Second Amended Complaint. A jury trial is demanded.

**PRELIMINARY STATEMENT**

1.      This is an action for injunctive relief and damages on account of discrimination

against the Plaintiff, due to her disability, and acts of tortious and other wrongful,

unlawful conduct.  It is brought under the First Amendment of the United States

Constitution, Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, *et*

*seq.* and Title V §503 of the Act, 42 U.S.C. 12203.  Relief is also sought under 42 U.S.C.

1983.  Relief is further sought under the appropriate statutes of the State of Connecticut,

and the common law of the State of Connecticut and Federal Common Law.

**PARTIES, JURISDICTION AND VENUE**

2.      Plaintiff, Shirley Rawls (hereinafter "Plaintiff"), is a citizen of the United States

and the State of Connecticut residing in New Haven, Connecticut.

3.      Defendant, New Haven Board of Education (hereinafter "the Board") is a

statutorily authorized agency / department of the City of New Haven, a municipality

located in the State of Connecticut, and having its principal administrative offices

located at 54 Meadow Street, New Haven, CT 06519 along with numerous schools and

other facilities located throughout the City of New Haven.

4.      Defendant, Karen Wolff (hereinafter Wolff"), was at all times relevant herein an

employee of the Board holding the position of "Facilitator" at the High School in the

Community (hereinafter "HSC") and, on information and belief, is a resident of the

2

State of Connecticut and citizen of the United States. Suit is brought against Wolff in her individual and official capacities.

5.     Defendant, Starlett Wilder (hereinafter "Wilder") was at all times relevant herein an employee of the Board holding the position of Director Personnel and Labor Relations and, on information and belief, is a resident of the State of Connecticut and citizen of the United States. Suit is brought against Wilder in her individual and official capacities.

6.     Defendant, AFSCME Local 884 (hereinafter "Local 884"), is the Union Local of Council 4 of the Association of Federal, State, County and Municipal Employees. The offices of Local 884 are located at 267 Chapel Street, New Haven, Connecticut.

7.     Defendant, John Blando (hereinafter "Blando"), at all times relevant herein, was the President of Local 884 and, on information and belief, is a resident of the State of Connecticut and citizen of the United States. Suit is brought against Blando in his individual and official capacities.

8.     Defendant, AFSCME, Council 4 (hereinafter "Council 4"), is the Union District office of the Association of Federal State, County and Municipal Employees. The offices of Counsel 4 are located at 444 East Main Street, New Britain, CT 06051.

9.     Defendant Ernie Lewis (hereinafter "Lewis"), at all times relevant herein , was an employee of Council 4 and, on information and belief, is a resident of the State of

3

Connecticut and citizen of the United States.  Suit is brought against Lewis in his individual and official capacities.

10.     Jurisdiction over Plaintiff's federal statutory and United States constitutional claims are authorized by 28 U.S.C. 1343, 28 U.S.C. 1331, and the proceeding authorized by §1983 and §1985 of Title 42 to be commenced by any citizen of the United States or other persons within the jurisdiction thereof to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured by the Constitution of the United States.  Jurisdiction over Plaintiff's Title I and Title V claims are further authorized by 42 U.S.C. 12202 (Title V §502).

11.     Jurisdiction over Plaintiff's claims under Connecticut statutory law and Connecticut common law are based on 28 U.S.C.A. §1367 which authorizes jurisdiction over state law claims which "form part of the same case or controversy" as the Plaintiff's claims under federal law.

12.     Venue is proper under 28 U.S.C. §1391(b) because the events giving rise to Plaintiff's claims occurred in this district.

## PROCEDURAL HISTORY

13.    Plaintiff, Shirley Rawls, is an individual aggrieved by the conduct of the Board

within the meanings of the First and Fourteenth Amendments of the United States

Constitution, the Americans with Disabilities Act, 42 U.S.C. 1983, and 42 U.S.C. 1985.

14..    Plaintiff, Shirley Rawls, is an individual aggrieved by the conduct of Local 884

and Council 4 within the meaning of 42 U.S.C. 1983, 42 U.S.C. 1985.

15.    Plaintiff, within 300 days of the acts complained of, filed Charges of

Discrimination with the Equal Employment Opportunities Commission on or about

November 6, 2001.

16.    On July 29, 2002 Plaintiff received her Notices of Right to Sue dated July 26,

2002.

17.    This action was brought on or about October 22, 2002, within ninety (90) days of

receipt of each such notice respectively.

## FACTUAL BASIS OF CLAIM

18.    The Plaintiff suffers from a disability within the meaning of ADA.

19.    The Board is an employer within the meanings of Title I of the Americans with

Disabilities Act of 1990, 42 U.S.C. 12111, *et seq.*,  Title V §503 of the Act, 42 U.S.C. 12203,

42 U.S.C. 1983, and 42 U.S.C. 1985.

5

20.     At all times relevant herein, the terms and conditions of Plaintiff's employment were governed by a contract between the New Haven Board of Education and Local 884.

21.     At all times relevant herein, Plaintiff was a member in good standing of Local 884.

22.     Plaintiff commenced her employment with the Board on or about July 1, 1992.

23.     At all times relevant herein Plaintiff held the position of Clerk Typist I and was assigned to the High School in the Community, a facility of the Board located at 175 Water Street, New Haven, Connecticut.

24.     During the 1999 - 2000 school year Plaintiff's desk was located in a semi-private office within the main office of HSC

25.     During the 2000 - 2001 school year, prior to Plaintiff's disclosure of her disability or a request for reasonable accommodation, Plaintiff's desk was situated in a private office in the main office of HSC,.

26.     On or about July 29, 2000 Plaintiff was evaluated by William Hendrixson, APRN, who diagnosed Plaintiff as suffering from Major Depressive Disorder and severe anxiety attacks.

27.     Plaintiff's anxiety attacks are triggered or precipitated by Plaintiff being in busy, open environments.

6

28.    Said anxiety attacks leave Plaintiff debilitated to the point where she is unable to perform her work related duties and other normal daily activities.

29.    On or about January 9, 2001 Plaintiff became unable to work as a result of her disability.

30.    While on sick leave Plaintiff received numerous telephone calls from Wolff, her supervisor, regarding work which was performed and/or needed to be performed.

31.    On or about January 19, 2001 Plaintiff returned to work and on that date received from Wolff what can only be described as a performance appraisal/written reprimand dated January 22, 2001 which was distributed to numerous personnel.

32.    In the January 22, 2001 letter, Plaintiff was advised that her desk would be relocated to an open area.

33.    This relocation, as a result of its placement in an open area, would precipitate Plaintiff's anxiety attacks

34.    Said anxiety attacks leave Plaintiff debilitated to the point where she is unable to perform her work related duties and other normal daily activities.

35.    On January 19, 2001 Plaintiff requested that she be permitted to retain her desk in the private office as reasonable accommodation of her disability.

36.    From January 19 through February 26, 2001 Plaintiff made numerous attempts to return to work but each time was unsuccessful because her condition was exacerbated

7

because she was not permitted to work in the private office to which she had been assigned prior to the commencement of her medical leave on January 9, 2001.

37.    During each of these attempts to return to work, Plaintiff directed to Wolff an oral request that she be permitted to continue working in the private office, to which she had been assigned at the commencement of the school year, an accommodation which would have permitted her to fulfil her duties as a Clerk Typist I.

38.    As a result of each confrontation with Wolff, which was precipitated by her request for accommodation, Plaintiff experienced an anxiety attack.

39.    On or about February 5, 2001 Plaintiff, in accordance with Local 884's collective bargaining agreement with the Board, requested a meeting with Wolff and provided a copy of said Level I Grievance to Defendant Local 884.

40.    Pursuant to the collective bargaining agreement between the Board and Local 884 a response to a Level I Grievance is required within three (3) days.

41.    Plaintiff received no response to this letter, as is required pursuant to the collective bargaining agreement.

42.    Upon information and belief, despite notice of the institution of a Level I Grievance by Plaintiff, Local 884 by and through its agent, John Blando, failed and neglected to pursue recourse against the Wolff and the Board for the failure to respond.

43.    During the period between January 19, 2001 and January 16, 2001 Plaintiff made

numerous unsuccessful attempts to contact Defendant Blando and Local 884.

44.    On or about February 16, 2001 Plaintiff received a letter from Defendant Wilder,

Director of Personnel and Labor Relations for the Board, directing her to attend a

hearing on February 27, 2001 to discuss her job performance.

45.    As a result of the lack of communication from Defendant Blando and Local 884

Plaintiff sought assistance from Council 4.

46.    On or about February 26, 2001 during Plaintiff's final attempt to return to work,

Plaintiff was advised by Wolff to "pack it in" because she had once again requested

that her disability be accommodated by permitting her to work in the private office to

which she had been assigned at the commencement of the  school year.

47.    This confrontation with Wolff resulted in Plaintiff experiencing an anxiety attack

which left her debilitated.

48.    After the February 26, 2001 confrontation with Wolff, Plaintiff entered the

office to which she had been assigned in Fall 2000 and called Lewis, her union

representative.


49.    In the course of this telephone conversation Plaintiff was advised by Lewis, to

notify Wolff that she would not be remaining at work that day because she was

9

experiencing an anxiety attack.

50.    In the course of this conversation Plaintiff requested that the meeting scheduled for February 27, 2001 be postponed because she would not be fit to attend said hearing as a result of the anxiety attack which she was experiencing.

51.    She was advised by Lewis that such postponement would not be a problem.

52.    On information and belief, Plaintiff's telephone conversation with Lewis was heard by an unknown third party.

53.    Upon completion of her telephone call with Lewis, Plaintiff left the building and has not returned to work.

54.    On February 27, 2001 Plaintiff continued to experience the stress-induced anxiety attack which was a result of the confrontation with Wolff the previous day and continued to  be unfit to attend the hearing scheduled for said date.

55.    On or about February 27, 2001 Plaintiff again contacted  Ernie Lewis of Council 4, her union representative, requesting that the hearing be postponed to another time when Plaintiff was fit to attend said hearing.

56.    In the course of this telephone conversation Plaintiff was advised that failure to appear at this meeting could result in termination.

57.    Plaintiff was further advised by Lewis to appear for the meeting and that a postponement would be requested at that time.

58.     On information and belief, Ernie Lewis made no attempt to contact Defendant Wilder on February 26 or 27, 2001 in order to obtain a postponement of the hearing.

59.     On information and belief, Lewis and Defendant Wilder conspired to compel Plaintiff's presence on February 27, 2001, with full knowledge that Plaintiff was unfit to participate in the hearing scheduled for said date.

60.     On information and belief, Lewis and Defendant Wilder conspired to compel Plaintiff's presence in a place and at a time that Wolff would be present.

61.     On information and belief, Lewis and Defendant Wilder knew, or reasonably should have known, that Wolff's presence at said hearing would further exacerbate Plaintiff's already exacerbated condition.

62.     Plaintiff, attended the February 27, 2001 hearing despite continuing to experience the anxiety attack which had commenced the previous day.

63.     It was Plaintiff's understanding from Lewis that her presence was solely required in order to request that the hearing be postponed to another time when Plaintiff was able to participate in said meeting.

64.     Lewis and Joanne DeAngelo, Union Steward, Local 884, attended the February 27, 2001 hearing with Plaintiff.

65.     As Plaintiff, Lewis, and DeAngelo were entering the building, Wolff was across the street and Plaintiff became visibly upset when confronted with the fact that Wolff

11

would be present.

66.    Despite Plaintiff's obvious state of distress prior to the meeting Lewis did not make any attempt to postpone the meeting as he had previously indicated to Plaintiff was the purpose of her appearing at that time and place.

67.    Throughout the meeting the Plaintiff was in an obvious state of distress in that she was weeping.

68.    Throughout the course of the meeting, Plaintiff's weeping progressed to open crying.

69.    Additionally, because Plaintiff was uncomfortable with her emotional display, she gradually positioned herself  so that ultimately her back was to all other parties present in said meeting.

70.    Further, Plaintiff was unable to raise her head to make eye contact with any person present.

71.    As a result of Plaintiff's demeanor, Defendant Wilder commanded Plaintiff to "look at me" when she was speaking to Plaintiff.

72.    In the course of this meeting, Plaintiff's request for a reasonable accommodation was, once again, denied and Plaintiff was placed on medical leave in accordance with the Family Medical Leave Act of 1993.

73.     On information and belief, there was no meaningful dialogue between plaintiff, Lewis (her union representative) and the Board relative to the accommodations sought by Plaintiff.

74.     Upon conclusion of this meeting a member of the staff of Defendant Wilder's office was called in to review and explain the paperwork required pursuant to the Family Medical Leave Act of 1993.

75.     At the time that these documents were reviewed with Plaintiff she was incapacitated by her disability and unable to fully comprehend the meaning of the documents presented for her execution.

76.     On or about Friday, March 2, 2001 Defendant Wilder directed to Plaintiff via certified mail return receipt requested and regular mail a letter instructing her to refrain from speaking with other Board employees and entering school property.

77.     It is noted that school property is utilized for purposes other than school functions and school functions do include events (i.e. sporting events and fine arts performances) which are open to the general public.

78.     On or about Saturday, March 3, 2001 Plaintiff received the letter detailed in ¶76 above via regular mail.

79.    On Saturday, March 3, 2001 a note was left affixed to the residence of Plaintiff by Board employee Domingo Santiago requesting that Plaintiff contact him regarding the keys in her possession.

80.    On Sunday, March 4, 2001 the letter described in ¶76 above was also hand delivered to Plaintiff by Domingo Santiago, a member of the Security Department.

81.    On Sunday, March 4, 2001 Plaintiff surrendered her keys to Domingo Santiago.

82.    On information and belief, Plaintiff's successor/replacement, a non-union employee was/is continuing to work in the private office in which Plaintiff had been working prior to her January 9, 2001 medical leave.

## COUNT ONE
## VIOLATION OF PLAINTIFF'S
## FIRST AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION
## AS TO THE BOARD AND DEFENDANT WILDER

83.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set forth herein.

84.    The March 2, 2001 letter forwarded to Plaintiff as detailed in ¶ 76 above, violated Plaintiff's First Amendment Right to Freedom of Association.

85.    Defendant Wilder knew or reasonably should have known that the instructions contained in the March 2, 2001 constituted a violation of Plaintiff's constitutionally protected right to Free Association.

86.    Defendant Board, in failing to take any corrective action, ratified the violation of

14

Plaintiff's constitutionally protected right to Free Association.

87.    Plaintiff has suffered, continues to suffer and will in the future suffer emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**AS TO THE BOARD**

88.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set forth herein.

89.    The Board's failure to permit Plaintiff to remain at the desk in the private office as a reasonable accommodation of Plaintiff's disability constitutes a violation of the Americans with Disabilities Act in that:

    a.    Said reasonable accommodation did not have any impact on the essential functions of Plaintiff's position; and

    b.    With the aforementioned accommodation Plaintiff could perform all of the essential functions of her position.

90.    As a result of the Board's wrongful conduct, Plaintiff has suffered and continues to suffer loss of pay and benefits.

91.    On information and belief, Plaintiff will suffer loss of pay, benefits and other monetary losses in the future.

92.    Further, Plaintiff has suffered, continues to suffer and will in the future suffer

15

emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of life.

93.    On information and belief, the Board acted with malice or reckless indifference to the Plaintiff's rights protected under the United States Constitution and federal law.

**COUNT THREE**
**VIOLATION OF PLAINTIFF'S**
**PROCEDURAL DUE PROCESS RIGHTS IN ACCORDANCE WITH**
**ARTICLE XIV OF THE UNITED STATES CONSTITUTION**
**<u>AS TO THE BOARD AND DEFENDANT WILDER</u>**

94.    Paragraphs 1 through 8 are hereby incorporated and replead as if fully set forth herein.

95.    Plaintiff's procedural due process right was violated in that:

a.    The Board, by and through it's employee/agent Wolff, failed to respond to Plaintiff's Level I Grievance despite specific contractual language included in in the collective bargaining agreement between Local 884 and the Board which requires that a response to a Level I grievance be made within three (3) days;

b.    Wolff knew or reasonably should have known of her obligation to respond to Plaintiff's Level I Grievance in accordance with the terms of the collective bargaining agreement as detailed above.

c.    At the time of the February 27, 2001 hearing Plaintiff was debilitated by her disability to the extent that she was unable to participate;

16

d.    Despite the evidence, as described in ¶¶67 - 71, that Plaintiff was

debilitated and unable to take part or adequately defend herself in the February

27, 2001 hearing, Defendant Wilder proceeded with said hearing and in so

doing denied Plaintiff her right to a fair hearing;

96.    As a result, Plaintiff was placed on leave in accordance with the Family Medical

Leave Act of 1993.

97.    Upon information and belief, there was no meaningful discussion as to the

viability and practicality of the accommodation requested by Plaintiff.

98.    The paperwork required to be completed by Plaintiff relative to leave under the

Family Medical Leave Act of 1193 was presented to Plaintiff at a time when, despite the

fact that an agent/employee of the Board reviewed the documents with her, Plaintiff

was unable to fully understand their meaning.

99.    Plaintiff's right to procedural due process was further violated by this act in that

she was incapacitated by her disability at the time when these documents were

reviewed and executed.

100.    Upon information and belief the Board failed to take any corrective measures

against Defendant Wilder.

101.    In failing to take corrective measures, the Board ratified the unlawful conduct of

Defendant Wilder.

102.    As a result of Defendant Wilder and the Board's wrongful conduct, Plaintiff has

suffered and continues to suffer loss of pay and benefits.

103.    On information and belief, Plaintiff will suffer loss of pay, benefits and other

monetary losses in the future.

104.    Further, Plaintiff has suffered, continues to suffer and will in the future suffer

emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of

life.

105.    On information and belief, Defendant Wilder and the Board acted with malice or

reckless indifference to the Plaintiff's  rights protected under the United States

Constitution and federal law.

## COUNT FOUR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AS TO DEFENDANTS WOLFF, WILDER, BLANDO AND LEWIS
## IN THEIR INDIVIDUAL CAPACITIES

106.    Paragraphs  1 through 82 are hereby incorporated and replead as if fully set

forth herein.

107.    The above described acts of Defendants Wolff, Wilder, Blando and Lewis

included conduct, engaged in without due care or regard for the consequences of such

conduct on Plaintiff's emotional well-being.

108.    The Defendants knew or reasonably should have known that the course of

18

conduct in which they engaged would cause Plaintiff emotional distress.

109.    The conduct did cause and continues to cause Plaintiff emotional distress.

110.    The emotional distress from which Plaintiff has suffered and continues to suffer

is severe.

111.    As a result of Defendants' above described conduct, Plaintiff has suffered,

continues to suffer, and, on information and belief, will in the future suffer, severe

emotional distress including but not limited to, emotional pain, suffering,

inconvenience and loss of enjoyment of life.

**COUNT FIVE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANTS WOLFF, WILDER, BLANDO AND LEWIS**
**IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

112.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set

forth herein.

113.    Defendants Wolff, Wilder, Blando and Lewis, acting in the course of their official

duties and also as individuals engaged in conduct intentionally calculated to cause the

Plaintiff to suffer extreme emotional distress.

114.    The Defendants knew or reasonably should have known that the conduct in

which they engaged would result in the Plaintiff suffering emotional distress.

115.    This conduct did cause and continues to cause the Plaintiff emotional distress.

116.    The emotional distress from which Plaintiff has suffered and continues to suffer

19

is severe.

117.    As a result of Defendants' above described conduct,  Plaintiff has suffered,

continues to suffer, and on information and belief, will in the future suffer, severe

emotional distress including but not limited to, emotional pain, suffering,

inconvenience and loss of enjoyment of life.

## COUNT SIX
## BREACH OF THE DUTY OF FAIR REPRESENTATION
## AS TO LOCAL 884 AND COUNCIL 4

118.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set forth

herein.

119.    The failure of Council 4 and Local 884 to adequately and properly represent the

interests of Plaintiff in administrative proceedings, such as the hearing held February

27, 2001, breached their duties of fair representation to the Plaintiff.

120.    As a result of Council 4 and Local 884's breach of the duty of fair representation

Plaintiff has suffered loss of pay, benefits and other monetary losses.

121.    On information and belief, Plaintiff will suffer loss of pay, benefits and other

monetary losses in the future.

122.    Further, Plaintiff has suffered, continues to suffer and will in the future suffer

emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of

life.

123.    On information and belief, Council 4 and Local 884 acted with malice or reckless indifference to the Plaintiff's statutorily protected rights.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**<u>AS TO COUNCIL 4 AND LOCAL 884</u>**

124.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set forth herein.

125.    By the conduct described above, Local 884 tortiously interfered with Plaintiff's employment contract with the Board.

126.    Said interference was malicious, wanton and wilful.

127.    Plaintiff has suffered and continues to suffer loss of pay, benefits and other monetary losses.

128.    On information and belief, Plaintiff will suffer loss of pay, benefits and other monetary losses in the future.

129.    Further, Plaintiff has suffered, continues to suffer and will in the future suffer emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT EIGHT**
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY**
**<u>AS TO COUNCIL 4 AND LOCAL 884</u>**

130.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set

21

forth herein.

131.    By the conduct described above, Local 884 tortiously interfered with Plaintiff's expected ongoing employment with the Board.

132.    Said interference was malicious, wanton and wilful.

133.    Plaintiff has suffered and continues to suffer loss of pay, benefits and other monetary losses.

134.    On information and belief, Plaintiff will suffer loss of pay, benefits and other monetary losses in the future.

135.    Further, Plaintiff has suffered, continues to suffer and will in the future suffer emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of life.

## COUNT NINE
## CONSTRUCTIVE DISCHARGE AS TO THE BOARD

136.    Paragraphs 1 through 82 are hereby incorporated and replead as if fully set forth herein.

137.    The failure of the Board to make the necessary and statutorily required reasonable accommodations needed in order for Plaintiff to fulfil her duties constitutes constructive discharge.

138.    Plaintiff has suffered and continues to suffer loss of pay, benefits and other monetary losses.

22

139.   On information and belief, Plaintiff will suffer loss of pay, benefits and other monetary losses in the future.

140.   Further, Plaintiff has suffered, continues to suffer and will in the future suffer emotional pain and suffering , inconvenience, mental anguish, and loss of enjoyment of life.

WHEREFORE, the Plaintiff demands:

1.   Back pay;

2.   Reinstatement with all benefits, seniority and other monetary compensation, or in the alternative, front pay;

3.   Compensatory damages for monetary damages other than back pay, and for emotional, pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

4.   Damages for the deprivation of rights secured to her under the Laws and Constitution of the United States;

5.   Punitive Damages under the Americans with Disabilities Act;

6.   Punitive Damages under 42 U.S.C. §§1983;

7.   Punitive damages under all State Tort Claims;

8.   Attorney's fees under 42 U.S.C. §1988 and 42 U.S.C. §12205;

9.   Attorney's fees, prejudgment interest, expert witness fees and costs; and

10.   Any and all such other relief as the Court may deem fair and equitable.

23

THE PLAINTIFF
SHIRLEY RAWLS

By: _____
Michael W. Mackniak
87 Meadow Street
Naugatuck, Connecticut 06770
Telephone 203-723-9242
Facsimile 203-723-9205
Fed. Bar. No.: Ct15692

## CERTIFICATION

It is hereby certified that a copy of the foregoing was sent via first class mail, postage prepaid on this the 12TH day of January, 2004 to the following counsel of record:

Audrey Kramer, Esq.
Assistant Corporation Counsel
City of New Haven
165 Church Street, 4th Floor
New Haven, CT  06510

J. William Gagne, Jr., Esq.
Gagne & Associates, P.C.
1260 Silas Deane Highway
Wethersfield, CT  06109

_____
Michael W. Mackniak

24